IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SHERRY ANN HEARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:17-cv-00052-O-BP |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER**

Plaintiff Sherry Ann Heard ("Heard") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE AND REMAND** the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Heard filed an application for DIB on September 3, 2013, alleging that her disability began on June 12, 2013. (Transcript ("Tr.") 61). The Commissioner denied her claim initially on May 14, 2014, and denied it again on reconsideration on September 29, 2014. *Id.* Heard requested a hearing, which was held on September 16, 2015, before Administrative Law Judge ("ALJ") Roy E. LaRoche, Jr., with Heard and her attorney, Carla E. Earwood, present. *Id.* The ALJ issued his decision on October 14, 2015, finding that Heard was not disabled. (Tr. 75).

In his decision, the ALJ employed the statutory five-step analysis and established during step one that Heard had not engaged in substantial gainful activity since June 12, 2013, the alleged disability onset date. (Tr. 64). At step two, the ALJ determined that Heard had the severe impairments of congestive heart failure, coronary artery disease, obesity, affective disorder, and anxiety disorder. *Id.* At step three, the ALJ found that Heard's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). *Id.* In particular, the ALJ concluded that Heard retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. 66). At step four, the ALJ determined that Heard was unable to perform past relevant work. (Tr. 72). The ALJ cited representative professions from the Dictionary of Occupational Titles ("DOT"), taken from the VE's testimony, that could be performed: addresser, tube operator, and document preparer. (Tr. 74). As a result of the five-step analysis, the ALJ found that Heard had not been under a disability, as defined in the Social Security Act, from June 12, 2013, through the date of his decision. *Id*.

The Appeals Council denied review on March 7, 2017. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.  FACTUAL BACKGROUND

According to Heard's pleadings, testimony at the administrative hearing, and the administrative record, she was forty-three years old on the alleged disability onset date, and forty-six years old at the time of the administrative hearing. (Pl's Br. 4). She completed the 12th grade and was enrolled in Special Education classes. *Id.* Her past relevant work includes working as a

cook, hotel housekeeper, and nurse aid. (Pl.'s Br. 5; Tr. 96). Heard asserts that her physical impairments render her disabled under the SSA.

### III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant

bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.   ANALYSIS

Heard raises three issues on appeal. She claims (1) that the ALJ's RFC determination is not supported by substantial evidence; (2) that the ALJ improperly weighed the medical source opinions of record; and (3) that the VE testimony improperly referred to potential Americans with Disabilities Act accommodations.

**A. Substantial Evidence Supports the ALJ's RFC Determination**

Heard argues that disparities exist between the ALJ's decision and the VE's testimony, and thus the RFC is not substantially supported. (Pl.'s Br. 7). Specifically, Heard argues that the ALJ's determination that "she should be allowed to sit or stand alternatively every 30 minutes at the workstation" is not substantially supported by the record and conflicts with the VE's testimony. *Id.* The ALJ's RFC states, in pertinent part, that "the vocational expert's testimony is consistent with the information contained in the [DOT], except that the DOT does not address the ability to alternate between sitting and standing. The [VE] testified that based on her professional experience, the enumerated jobs would allow for a sit stand option." (Tr. 74). Heard claims that the DOT codes do not address the ability to alternate between sitting and standing and that such conflicts are direct conflicts that the ALJ had the duty to ensure that the record was fully and fairly developed. Furthermore, Heard argues that the VE never expressly mentioned the VE's professional experience in her testimony in response to the ALJ's question regarding the sit/stand option.

In addressing the apparent conflict between the ALJ's finding that Heard is limited to sitting or standing alternatively every thirty minutes at a work station and the DOT, the Commissioner concedes that the DOT does not address the ability to alternate between sitting and standing. ECF No. 15 at 10. Heard argues that the ALJ's RFC stating that "the VE's testimony is consistent with the information contained in the [DOT], except that the DOT does not address the ability to alternate between sitting and standing. The [VE] testified that based on her professional experience, the enumerated jobs would allow for a sit stand option," is not expressly found in the record, and thus, there also appears to be a conflict between the ALJ's findings and the VE's testimony. (Pl's Br. 8).

However, at the hearing the VE expressly testified that her opinion is based on her professional qualifications as a neutral party. (Tr. 109–110). The ALJ asked the VE if jobs existed for an individual limited to

> "simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions . . . would not be able to have interaction with the public and still limited to occasional with coworkers and supervisors . . . and "would need the ability to alternate between sitting and standing every 30 minutes . . . at the work station."

(Tr. 55–56).

Following further questioning by Heard's attorney, the ALJ asked the VE if the testimony she gave during the hearing was consistent with the DOT, to which the VE replied, "Yes, it is." (Tr. 115). The undersigned finds that the ALJ properly asked the VE whether the VE's opinions are based on her professional qualifications and asked the VE the requisite hypothetical questions regarding Heard's sitting and standing limitations in reaching his ultimate RFC determination.

Furthermore, Heard argues that the conflict between the VE's testimony and DOT regarding the sit and stand limitation warrants reversal. (Pl's Br. 8). Though the DOT lists the maximum requirements of an occupation, a VE's testimony is not required to do so. *See* SSR 00–4p, 2000 WL 1898704; *see also Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995). A VE may testify about the "range of requirements of a particular job as it is performed in specific settings," and in that way "provide more specific information about jobs or occupations than the DOT." SSR 00–4p, 2000 WL 1898704; *see also Jones*, 72 F.3d at 82.

A direct conflict may arise when the VE's testimony regarding the exertion or skill level of a particular job is facially different than that indicated in the DOT or when the VE's testimony creates a conflict between the ALJ's RFC determination and the description of the jobs in the DOT. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). When there is a direct and obvious conflict

between a VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's evidence to support a determination of disability. *Jones*, 72 F.3d at 82. However, when the conflict is implied or indirect, and the VE's testimony did not undergo adversarial cross-examination at the hearing, the ALJ may rely on the VE's testimony without resolving the later-proposed conflict so long as the record reflects an adequate basis for doing so. *See Carey*, 230 F.3d at 146. Implied conflicts and exceptions occur under various unique circumstances when VEs are called on to testify as to an individual claimant's capabilities. *See id.*

Here, both parties agree that the DOT listings the VE offered as jobs available to Heard are silent on the sit/stand option. However, the lack of limitations outlined by the DOT does not constitute a direct conflict. This issue was addressed in *Roberson v. Colvin*, where the court found that "while it is true that the DOT descriptions do not include a sit/stand option, it is also true that none of the job descriptions exclude such an option. Stated differently, plaintiff has not presented anything showing the DOT's job descriptions are in conflict with the VE's testimony." No. 2:13-cv-197, 2015 WL 1408925, at *9 (N.D. Tex. Mar. 27, 2015). Thus, the fact that the DOT does not expressly mention the sit/stand limitation determined by the ALJ does not create a direct conflict.

However, even if there were an implied or indirect conflict between the VE's testimony and the DOT, remand is not necessary for such a conflict. The Fifth Circuit has expressly held that "[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey*, 230 F.3d at 146. There is nothing in the record that calls into question the expert status of the VE, and the RFC the ALJ presented to the VE was based upon substantial evidence. The ALJ's reliance on the VE's testimony was not error, even if there arguably was an implied conflict between the VE's testimony

and the DOT. *See id.* Furthermore, at the hearing, Heard's attorney did not question the VE as to any issue related to the purported conflict now before the Court. While Heard's attorney questioned the VE about production standards and absenteeism in relation to maintaining employment, the attorney did not ask the VE questions about the apparent conflict between the DOT and sit/stand option. (Tr. 113–115).

Accordingly, there is no direct conflict between the ALJ's decision and VE's testimony concerning the sit/stand option as it relates to the DOT. Even if assuming *arguendo* such a conflict did exist, Heard has failed to demonstrate that the ALJ erred in relying on the VE's testimony in determining that Heard retains the ability to perform sedentary, unskilled work, including the job of addresser, tube operator, and document preparer. Once the Commissioner identifies alternative work the claimant can perform, the burden then shifts back to the claimant to show that she cannot do the identified work. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga v. Bowen,* 810 F.2d 1296, 1302 (5th Cir. 1987)).

Next, Heard argues that the ALJ erred under SSR 83-12 because Heard's limitations do not fit within the requirements of sedentary work. (Pl's Br. 8). Specifically, Heard argues that SSR 83-12 expressly provides "that prolonged sitting 'is contemplated for sedentary work' and most jobs have 'ongoing work processes' that demand staying in a certain place/posture for a length of time to accomplish the task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." *Id.* Heard relies heavily on the Fifth Circuit decision in *Scott v. Shalala*, which the court held that the ALJ erred in finding the claimant to be able to perform sedentary work with a sit/stand option limitation. 30 F.3d 33 (5th Cir. 1994). According to Heard, the ALJ had a duty to elicit more information from the VE given "SSR 83-12's recognition of

8

unskilled jobs being structured so that an individual would not be able to sit or stand at will was not adequately examined in the record." (Pl.'s Br. at 9).

In response, the Commissioner argues that Heard's interpretation of SSR 83-12 is misplaced, as the regulation "pertains to use of the Medical-Vocational Rules at step five as a framework for evaluating exertional limitations within a range of work or between ranges of work." ECF No.15 at 14; SSR 83-12, 1983 WL 31252 (1983). The Commissioner argues that SSR 83-12 applies differently in cases where the ALJ relies on VE testimony regarding a claimant's functional limitations. ECF No. 15 at 14. Thus, this case is distinguishable from *Scott*, where the ALJ did not consult a VE regarding the claimant's functional limitations given the sit/stand option. *Scott*, 30 F.3d at 34–35. The undersigned agrees. The Fifth Circuit in *Scott* found that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base." *Id.* at 33.

Here, as discussed above, the ALJ asked questions to the VE based upon a hypothetical individual's functional limitation of alternating between sitting and standing, and the VE testified to several jobs that Heard could do despite the sit/stand limitations. Furthermore, the Fifth Circuit has ruled that an ALJ may properly rely on a VE's testimony, considering that allowing for alternating between sitting and standing is "a prevalent accommodation in the workplace." *Jones*, 174 F.3d at 694; *see also Roberson v. Colvin*, No. 2:13–CV–197, 2015 WL 1408925, at *10 (N.D. Tex. Mar. 27, 2015). Thus, the ALJ did not commit reversible error on this ground.

## B. Medical Source Opinions

### i. Dr. Thota's Medical Source Opinion

Heard alleges that the ALJ erred in declining to afford controlling weight to the opinion of Dr. Venkat Thota, Heard's only treating physician of record, and Dr. Ahmad Abazid. (Pl.'s Br. 12–14). Heard argues that the ALJ erred by giving Dr. Thota's and Dr. Abazid's opinions "little weight." *Id.* Heard relies on the Fifth Circuit's decision in *Newton v. Apfel*, which requires ALJs—when faced with inconclusive or controverting evidence—to perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2) or otherwise seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. 404.1512(e). 209 F.3d 448, 453 (5th Cir. 2000). Under the applicable regulations, the ALJ must follow a six-factor detailed analysis unless the ALJ gives "a treating source's opinion controlling weight," that analysis only applies when a treating source's opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with" other substantial evidence." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000) (quoting *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir.1995).

The Fifth Circuit recently clarified that, "[i]n addition to the rules surrounding treating physicians, the regulations make clear that opinions from examining physicians must be considered." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). Specifically, the Fifth Circuit emphasized that "20 C.F.R. 404.1527 states that, '[g]enerally . . . more weight [is given] to the opinion of a source who has examined you than to the opinion of a source who has not examined you.'" *Id.* Here, Dr. Thota opines that Heard "cannot be employed because of ischemic cardiomyopathy and previous myocardial infarction." (Tr. 1089). In his RFC, the ALJ states that he afforded little weight to Heard's treating provider, Dr. Thota, because the statement that Heard

"is unable to work is not supported by evidence within his own treatment records as well as the evidence as a whole . . . [Dr. Thota] failed to give specific functional limitations with his statement, nor did he point to objective evidence with the record to support such an extreme statement." (Tr. 72).

The Commissioner acknowledges that the ALJ did not assess the opinion using the criteria set forth in 20 C.F.R. 404.1527(d)(2), but that because the record contains competing first-hand medical evidence supporting the ALJ's decision, the ALJ had no duty to weigh the factors under the regulation. ECF No. 15 at 17. Specifically, the ALJ found that Dr. Thota's opinion was conclusory and did not provide any specific functional limitations in connection with his opinion. *Id.* However, "medical notes that do not give an opinion on Plaintiff's physical limitations in the workplace or what activities [she] would be able to perform do not controvert the opinion of Plaintiff's treating physician." *Wilkerson v. Berryhill*, 2017 WL 109160, at *3 (N.D. Tex. Mar. 23, 2017); *see also Thornhill v. Colvin*, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) ("The problem with the ALJ's RFC determination is, as Plaintiff argues, that the ALJ rejected any medical opinion addressing or touching on Plaintiff's condition's effect on her ability to work and relied on progress notes that do not themselves address Plaintiff's work limitations.").

Furthermore, the ALJ afforded great/significant weight to the opinions of consultative examiners Dr. Darpan Kumar, Dr. Aaron Jodeh, Dr. Tania Khan, and Dr. Richard Kownacki in reaching his RFC determination. (Tr. 71). Dr. Kumar found that Heard could sit normally in an 8-hour workday with normal breaks, had mild limitations with standing and walking due to back pain, had no manipulative limitations, and had no relevant communicative or workplace environmental limitations. (Tr. at 592–593). Dr. Jodeh and Dr. Khan concluded that Heard would be able to perform normal activities based on the normal results from her physical exam. (Tr. 969).

Dr. Kownacki does not mention Heard's limitations, but diagnosed Heard with bipolar I disorder with a poor prognosis. (Tr. 522). But the consultative reports do not constitute a "competing medical opinion" that would excuse the ALJ from conducting the detailed analysis that Section 404.1527 requires. *See Kneeland*, 850 F.3d at 759. Thus, the consultative examiners "cannot be said to have provided a competing opinion" to support the ALJ's decision. *Wilkerson v. Berryhill*, No. 3:16-cv-851-BN, 2017 WL 1091601, at *3 (N.D. Tex. March 23, 2017).

While the undersigned agrees with the Commissioner that the record includes evidence that Heard's cardiovascular examinations were normal (Tr. 969, 996, 1088), there is no evidence in the record that directly contravenes Dr. Thota's opinion that Heard cannot work due to her diagnosis of ischemic cardiomyopathy and previous myocardial infarction. Thus, without a detailed analysis of the *Newton* factors, the Court is unable to determine whether the ALJ would have come to a different conclusion had he given more consideration to Dr. Thota's opinion—the only treating physician of record. *See Wilder v. Colvin*, 2014 WL 2931884, at *6 (N.D. Tex. June 30, 2014) ("On the record before it, the Court cannot say that the failure to conduct the detailed analysis is harmless error. Had the ALJ conducted that analysis, there is a realistic possibility that he would have given greater weight to the opinions of the treating physician.").

"[F]ailure to adhere to the procedures proscribed by the Social Security regulations is generally sufficient grounds for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). But a failure does not necessarily dictate a remand for further review. The Court will affirm a decision if the ALJ's error is harmless and remand if the plaintiff was not prejudiced due to the error. *See id.* A plaintiff establishes prejudice by showing that the ALJ could have reached a different outcome but for the error in question. *Newton*, 209 F.3d at 458. In this case,

the ALJ gave Dr. Thota's opinion, which found disabling work-related limitations, little weight. As a result, the error is not harmless because, if the ALJ had given more weight to Dr. Thota's opinions, there is a realistic possibility that he may have found Heard disabled. Thus, remand is proper on this ground.

Although remand is warranted on this ground alone, the Court will address Heard's remaining grounds for purposes of guiding the proceedings on remand.

  ii. *Dr. Abazid's Medical Source Opinion*

Heard argues that the ALJ committed reversible error for giving little weight to Dr. Abazid's opinion. (Pl.'s Br. 14). The Commissioner argues that the ALJ properly afforded Dr. Abazid's opinion little weight because "it is unknown what, if any treatment relationship Dr. Abazid had with [Heard]." (Tr. 72). The ALJ further found Dr. Abazid's medical form as unsupported by the rest of the medical record because the form makes conclusory findings that Heard's disability is permanent and that her disabling conditions included myocardial infraction, congestive heart failure, coronary artery disease, and diabetes. (Tr. 1031). While Heard argues that the ALJ had a duty to develop the record based on Heard's relationship with the Family Health Center, it is unclear from the record and from Heard's testimony what Dr. Abazid's role was with the center or what the extent of Dr. Abazid's relationship was with Heard. Under the applicable regulations, the ALJ was not under any obligation to give weight to Dr. Abazid's opinion. *See* 20 C.F.R. § 404.1502 (explaining that a treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has or has had an ongoing treatment relationship with the claimant); *see also Hernandez v. Heckler*, 704 F.2d 857, 860–61 (5th Cir. 1983) (affirming finding that a doctor who saw claimant twice in a 17 months was not a treating physician). The ALJ did not err by

failing to find that Dr. Abazid was a treating physician whose opinion deserved controlling weight under 20 C.F.R. § 416.927(c) because there is no record evidence that Dr. Abazid actually was Heard's treating physician. As the trier of fact, the ALJ was entitled to weigh the evidence against other objective findings, including the opinion evidence available, and the record as a whole. Substantial evidence properly supports the ALJ's appropriate evaluation of the medical opinions. Accordingly, reversal is not warranted on this ground.

### C. ADA Conflict

Furthermore, Heard argues that the ALJ's RFC was erroneously based on the VE's faulty testimony that Heard would be able to work given work-place accommodations. (Pl's Br. 15–16). The Fifth Circuit holds that "the ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other." *Jones v. Apfel*, 174 F.3d 692 (5th Cir. 1999) (quoting *Eback v. Chater,* 94 F.3d 410, 412 (8th Cir. 1996)). "[A] vocational expert should not base [her] determination of the availability of jobs on the assumption that the ADA requires an employer to accommodate an individual's disability." *Id.* In *Jones*, the Fifth Circuit ultimately held that the ALJ did not commit reversible error in relying on the VE's testimony because the VE's testimony regarding the availability of jobs did not assume that the jobs required accommodation, but assumed that allowing an employee to alter between sitting and standing is a prevalent accommodation in the work place. *Id* (citing *Pena v. Apfel*, No. C–97–4445–VRW, 1999 WL 155699, at *2 (N.D. Cal. Mar.15, 1999) ("The ALJ did not assume that employers will accommodate plaintiff's physical limitations in making her decision. Rather, the ALJ's decision is based on the [vocational expert's] testimony that allowing for altering between sitting and standing is 'a commonplace accommodation in the workplace.'")).

Here, Heard argues that the ALJ based his RFC on an underdeveloped record and erroneous VE testimony that assumes Heard would be "able to work if her potential employer would accommodate" her disability. (Pl's Br. 15). The Commissioner contends that the ALJ's RFC is substantially supported by the record. ECF No. 19–20. At the September 16, 2015, hearing, the ALJ specifically asked the VE various hypothetical questions concerning an individual that was limited to light work; stand or work approximately six hours in an eight-hour work day; sit for approximately two hours per eight-hour work day with normal breaks; avoid specific exposures to irritants and noise; limited interaction with supervisors, co-workers, and the public; and restricted to sedentary work, simple, routine, repetitive tasks. (Tr. 110–112). The ALJ asked the VE, given these impairments, if any work existed in the national economy that the hypothetical individual would be able to perform. *Id.* The VE responded that a person with such limitations would be able to work as a merchandise marker, routing clerk, collator operator, addresser, tube operator, and document preparer. (Tr. 54–55). Here, as in *Jones*, the VE's testimony did not assume the jobs required accommodation, but rather that an individual with such limitations would still be able to work jobs available in the national economy. Thus, the ALJ did not commit reversible error on this ground.

## V. CONCLUSION

Because the undersigned is unable to determine whether the ALJ would have come to a different conclusion had he given more consideration to Heard's treating physician's opinion, remand is proper. However, Heard's remaining claims do not constitute reversible error.

## RECOMMENDATION

The undersigned RECOMMENDS that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this matter for further proceedings.

## **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **April 26, 2018,** to serve and file written objections to the United States Magistrate Judge's Findings, Conclusions, and Recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed April 12, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE